D. L. BLACKSTONE, ADMINISTRATOR, ESTATE OF JAMES L. SPRINKLE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 10401.   Promulgated June 7, 1928.

*T. B. Weir, Esq.,* and *F. S. Jacobsen, C. P. A.,* for the petitioner. *J. E. Marshall, Esq.,* for the respondent.

458

LOVE: The petition contains an allegation that the taxes in controversy are $15,137.26 for the calendar year 1918 and $252.84 for the calendar year 1919. This allegation is admitted in the answer. Testimony was offered by both sides, and the stipulation of counsel was framed apparently upon the understanding that both of these years 1918 and 1919 are in question. However, the deficiency letter annexed to the petition states a deficiency only for the year 1919. The statement which accompanied the deficiency letter and which was filed by petitioner at the hearing states an overassessment for 1918. Therefore, upon the facts before us, we have no jurisdiction to redetermine the tax liability for 1918, since it does not appear that a deficiency was determined for this year, or that the overassessment resulted from the denial of a claim for the abatement of an assessment. Revenue Act of 1926, section 274 (g). See *Appeal of Cornelius Cotton Mills*, 4 B. T. A. 255. The basis of the Board's jurisdiction must be found

in the statute and if the necessary jurisdictional facts are not present, jurisdiction can not be conferred by admissions in the pleadings or agreement of the parties.

The testimony relating to the value of the sheep and lambs is somewhat confused. Much of it related to the varying values for sheep of different ages and there was also some evidence based on a per pound value of lambs and older ewes. Such testimony was not of material assistance in arriving at the value of a band of over 11,000 sheep of different ages and weights. One witness of over 40 years experience in the sheep business and who was acquainted with these particular sheep, testified that the average value at December 31, 1918, was $9 per head, and at December 31, 1919, was $8. A witness called by respondent placed the average value December 31, 1918, at $11 per head, and testified he had sold some yearlings in that year for $15.50. The oldest sheep he thought would not be worth more than $5 per head. He did not fix the value at December 31, 1919. It was not disputed that there was some decline in value during that year. The valuation we have made was arrived at after carefully weighing all of this testimony.

We do not feel warranted by the evidence in disturbing the values found by the Commissioner for the lambs. The clearest testimony relating to the value of the lambs separately places the value higher than that found by the Commissioner.

Also, we have found the value of the cattle at December 31, 1919, to be the same as fixed by Commissioner, viz, $45. This value was testified to by petitioner's own expert.

In regard to the value of the hay, we have the opinion of one witness that it was worth from $6 to $10 per ton both at the beginning and the end of 1919. There was also evidence of sales of hay in bales delivered by railroad at stations in that part of Montana, which was shipped from other points in the State and from Idaho. Such sales in November and December, 1918, ranged from $25 to $30 per ton, and in the same months of 1919 from $29.50 to $31 per ton. The freight charges were paid by the shippers. It is also in evidence that the cost of hauling hay by team or truck is about 50 cents per ton mile. It is argued by respondent that these sales establish a market price for petitioner's hay. Some of the other testimony relates to what a ranchman under the necessity of having hay might be willing to pay for it. This, however, is not a test of the market value. Value is established by the concurring opinion of a buyer and a seller neither of whom is under compulsion, as to the relative desirability of the article and money, expressed in terms of money. We also believe that the value of the hay in bales delivered at the point where the purchaser desires it is not the correct

measure of the value of the petitioner's hay. The term value is relative and expresses the relation between the article and money at a particular place and time. Petitioner's hay was in stacks located on his ranches extending from 15 to 25 miles from a railroad station. It is obvious that it would cost money to bale, haul and ship it to another place where a purchaser might be found. These costs must be reckoned in determining the value to the owner of hay circumstanced as this hay was. The amount petitioner would receive for it would be the market price less the charges mentioned, whether they were paid by him or by the purchaser. The test of the value of the hay in his possession is what he can get for this hay, and not what he might be obliged to pay for hay at a distant point. In arriving at the values that we have found for the beginning and the close of the year we have given weight to all of the testimony, including the fact that the winter of 1918-1919 was an open one and the following winter was a hard one. There was an increase in value in the winter of 1919-1920, over the preceding year.

> *The petition is dismissed as to the year 1918.*
> *Judgment will be entered for the year 1919,*
> *under Rule 50.*